UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DICK CLAYTON CHAFFEE,

    Plaintiff,

v.                                                          Case No. 13-13428

COMMISSIONER OF SOCIAL SECURITY,           HON. AVERN COHN

    Defendant.

_____/

**<u>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 8)
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 10)
AND DISMISSING CASE</u>**

### I. INTRODUCTION

This is an action appealing the denial of an application for Supplemental Security Income (SSI) benefits under the Social Security Act (SSA). Dick Clayton Chaffee (Plaintiff) appeals the Commissioner of Social Security's (Defendant) denial of his application for SSI benefits. Before the Court are the parties' cross-motions for summary judgment. (Doc. 8, 10). For the reasons below, there is substantial evidence supporting the decision of the Administrative Law Judge. Plaintiff's Motion for Summary Judgment (Doc. 8) is therefore DENIED and Defendant's Motion for Summary Judgment (Doc. 10) is GRANTED.

### II. BACKGROUND

### A. Procedural History

Plaintiff filed an application for SSI benefits on October 8, 2010, alleging disability from all gainful employment since September 15, 1996. Until that time, Plaintiff worked for the United States Postal Service as a mail carrier. Plaintiff claimed that he was unable to work, due to several debilitating conditions that, when taken as a whole, render him unable to perform any substantial gainful activity. Specifically, Plaintiff claimed that he was unable to work due to paranoid schizophrenia, irritable bowel syndrome, anxiety, and depression. (Tr. at 142).

However, based on Plaintiff's earnings, he had acquired only enough Social Security credits to remain insured through December 31, 2001—the date that Plaintiff's insured status under the SSA expired. Therefore, Plaintiff was required to demonstrate that he became disabled while he was insured under the SSA—on or before December 31, 2001—in order to receive disability benefits. Further, any disability acquired after this date cannot provide the basis for relief under the SSA. For reasons that are unclear in the record, Plaintiff did not file his application for SSI benefits until October 2010—more than 14 years after the alleged onset date, and nearly 9 years after his insured status expired.[1]

Plaintiff's claim was initially denied. At Plaintiff's request, a hearing was held before an administrative law judge (ALJ). (Tr. at 35) The ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels, provided he was limited to simple, routine tasks and to low-stress work involving no interaction with the public and only occasional interaction with coworkers.

---

[1] Although the length of time between Plaintiff ceasing work and the filing of the disability application may seem unusually long, the disability application was filed within the time allowed. For a graphical timeline of relevant events see Exhibit 1, attached.

This became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. (Tr. at 22-24) This action followed.

### B. The ALJ's Decision

The ALJ first considered Plaintiff's claim that he suffered from irritable bowel disease, insomnia, chronic fatigue, back/sciatica pain, carpal tunnel syndrome, and headaches. In support, Plaintiff submitted a letter from Dr. Kenneth Chun, dated June 5, 1997 (Tr. at 231-32). In the letter, Dr. Chun stated that Plaintiff suffered from peptic ulcer disease, irritable bowel syndrome, chronic insomnia, and fatigue, as well as multiple symptoms of psychologically induced stress (Tr. at 231). In addition, Dr. Chun noted that Plaintiff suffered from mild recurrent depression (Tr. at 231). With respect to Plaintiff's claimed back/sciatica pain, carpal tunnel syndrome, and headaches, Dr. Chun's letter mentioned no such symptoms. Dr. Chun concluded that despite the "stressful situation created in [Plaintiff's] work environment," Plaintiff was highly intelligent, well-motivated, had no signs of psychosis, and was capable of performing his duties as a postal service worker. (Tr. at 232).

Based on this letter, the ALJ concluded that Plaintiff suffered from recurrent major depression. However, the ALJ noted that Dr. Chun's letter revealed no permanent limitations that would interfere with Plaintiff's ability to perform basic work duties, and concluded that Plaintiff's other claimed conditions did not constitute severe impairments (Tr. at 38). In addition, because Dr. Chun's letter mentioned no symptoms relating to back/sciatica pain, carpal tunnel syndrome, and headaches, the ALJ noted that there was "no evidence of record to indicate" that Plaintiff received such diagnoses,

and concluded that these conditions were "not medically determinable." (Tr. at 38)

Turning to the RFC assessment, in addition to describing Plaintiff's claimed disabilities; the ALJ noted that Plaintiff said that he was unable to work due to his difficulty concentrating, his tendency to become distracted, and his need for frequent access to a bathroom. The ALJ considered Plaintiff's claims that he experienced panic attacks in large groups, as well as chronic insomnia, sciatica pain, carpal tunnel syndrome, and migraine headaches. However, the ALJ noted that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible, to the extent they were inconsistent with the ALJ's other findings.

Next, the ALJ considered an extensive range of medical records, as well as the medical evaluations by several examining and treating physicians. The most relevant evaluations, and the ALJ's treatment of them, are summarized as follows:

> **April 10, 1996 psychiatric evaluation by Jacob Zvirbulis, M.D.:** Dr. Zvirbulis assessed Plaintiff with a Global Assessment of Functioning (GAF) rating of 75, which indicates indicatives no more than slight impairment in social or occupational functioning. Dr. Zvirbulis found no restrictions from a psychiatric viewpoint and recommended that Plaintiff return to full-duty work (Tr. at 214). The ALJ noted that although Dr. Zvirbulis's assessment was made prior to Plaintiff's alleged onset date, she accorded it great weight as to Plaintiff's functional ability for the relevant time period.
>
> **May 14, 1996, evaluation letter from Ismail B. Sendi, M.D.:** Dr. Sendi had been treating Plaintiff for three months, and recommended that Plaintiff return to work (Tr. at 183). The ALJ noted that although Dr. Sendi's evaluation was made prior to Plaintiff's alleged onset date, she accorded it great weight because Dr. Sendi was Plaintiff's treating psychiatrist.
>
> **June 14, 1996 evaluation by Dr. Sendi:** Dr. Sendi, a treating physician, provided a diagnosis of panic disorder with agoraphobia, and noted that Plaintiff was anxious, depressed, and had difficulty trusting others. Dr. Sendi assessed Plaintiff as having a GAF score of 40, indicating "some impairment in reality testing or communication OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." (Tr. at 41) As with Dr. Sendi's previous assessment, although the evaluation was made prior to

Plaintiff's alleged onset date, she accorded it great weight as to Plaintiff's functional ability. However, the ALJ accorded the GAF score little weight because it was inconsistent with Dr. Sendi's previous assessment that Plaintiff was capable of returning to work.

**June 5, 1997 evaluation letter by Kenneth Chun, M.D.:** Dr. Chun had been treating Plaintiff since July 13, 1995. As noted above, Dr. Chun stated that Plaintiff suffered from a number of physical and psychological conditions, nonetheless concluding that Plaintiff was highly intelligent, well-motivated, and capable of performing his duties, and had never manifested any signs of psychosis. The ALJ accorded Dr. Chun's opinion great weight as Plaintiff's treating internist over a significant period.

**June 4, 1997 intake records by Dr. John Sczomak, M.D.:** Dr. Sczomak, a treating physician, noted that Plaintiff reported feeling depressed and anxious for more than six months, and that Plaintiff stated that he had difficulty concentrating, suffered poor sleep and appetite, and continuously felt stress and pressure. Dr. Szomak diagnosed Plaintiff with major depression, recurrent, and recommended psychotherapy on a weekly basis.

**June 6, 1997 evaluation letter by Dr. Daniel F. Swerdlow-Freed:** Dr. Swerdlow-Freed, a treating physician, reported seeing Plaintiff between December 1995 and March 1996, and diagnosed Plaintiff with major depression, recurrent and mild. Dr. Swerdlow-Freed noted that Plaintiff terminated treatment after 11 sessions, against his advice.

In addition, the ALJ noted several other medical evaluations and records from various community health centers conducted after December 31, 2001, the date before which Plaintiff must prove that he became disabled. The ALJ concluded:

> Although the evidence from the relevant period is minimal at best, a review of the record in its entirety provides that the claimant has a severe impairment that caused limitations. While the record provides that the claimant sought treatment and was hospitalized subsequent to the date last insured, it is insufficient to establish limitations during the relevant period. Indeed, the claimant's limitations during the relevant period were not so excessive as to label them as work preclusive. With regard to this, the claimant's subjective complaints cannot be found completely credible.
> . . . .
> Further, there is nothing from either Dr. Sczomak or Dr. Chun from this period to indicate that the claimant had limitations greater than those found in the [RFC]. For example . . . Dr. Chun opined that the claimant was capable of performing his duties, well-motivated, and that he never had any signs of psychosis. I have given the claimant the benefit of the

5

>  doubt and incorporated limitations into the provided [RFC] that reflect his testimony, and are greater than those identified by his treating medical personnel.
>  . . . .
>  I have also considered the claimant's testimony with regard to his activities of daily living. The claimant reported that he took care of his parents, both of whom were ill with cancer, and took care of his home, including cooking and cleaning. . . . Accordingly, the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.

(Tr. at 43-44).

## III. STANDARD OF REVIEW

Once the Appeals Council concludes there is no reason to alter the ALJ's decision and denies a claimant's request for review, the decision of the ALJ becomes the final administrative decision of the Commissioner. 20 C.F.R. § 416.1484(b)(2). This Court reviews the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Judicial review under the statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the

opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that the Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip*, 25 F.3d at 286 (internal citations omitted). Further, this Court does "resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

## IV. DISCUSSION

Plaintiff has advanced two primary objections to the ALJ's decision. First, he says that the ALJ erred by according inappropriate weight to his treating physicians, Drs. Sendi, Sczomak, and Swerdlow-Freed. Second, he says that the ALJ's decision is

7

not supported by substantial evidence. Each is addressed in turn.

## A. The ALJ Accorded Appropriate Weight to Plaintiff's Treating Physicians

**1.**

Under the "Treating-Source Rule," the opinions of a claimant's treating physician are generally given more weight than those of non-treating and non-examining physicians. This is because treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2). Further, if the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," then an ALJ "will give it controlling weight." *Id.*; *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

When an ALJ does not give the treating source's opinion controlling weight, the ALJ must consider a number of factors in considering how much weight is appropriate. *Rogers*, 486 F.3d at 242. These factors include the length of the treatment relationship with the physician, the nature and extent of that relationship, the frequency of examination, the supportability of the physician's opinion, the consistency of that opinion with the record as a whole, and the specialization of the physician. *Wilson*, 378 F.3d at 544. In addition,

> [t]here is additional procedural requirement associated with the treating

> physician rule. Specifically, the ALJ must provide "good reasons" for discounting treating physicians' opinions, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

*Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4). The purpose of this rule is two-fold: "'to let claimants understand the disposition of their cases,'" and to "ensure[] that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

**2.**

Here, Plaintiff first argues that the ALJ erred by according little weight to Dr. Sendi's GAF score, while according great weight as to Dr. Sendi's assessment of Plaintiff's functional ability. This argument is without merit.

The record shows that the ALJ, in assigning Dr. Sendi's GAF score little weight, considered all of the relevant factors and provided good reasons for this decision. The ALJ noted that Dr. Sendi had treated Plaintiff for three years, and described the nature, extent, and frequency of their treatment relationship. However, the ALJ concluded that Dr. Sendi's June 14, 1996 GAF score was inconsistent with the prior determination—only one month earlier—concluding that Plaintiff was capable of returning to work.

The ALJ provided good reason for discounting Dr. Sendi's GAF score, and the Court can engage in a meaningful review of that decision. In the ALJ's analysis, she described Plaintiff's extensive medical and psychological history, evidenced by Plaintiff's own testimony, diagnoses by Plaintiff's treating physicians, and records from

community health centers. The ALJ also noted Plaintiff's daily activities—particularly his ability to care for himself, his ailing parents, and his home. The ALJ had sufficient basis to conclude that Dr. Sendi's GAF score is inconsistent with the determination that Plaintiff was capable of returning to work, as well as with Plaintiff's longitudinal history. Further, Plaintiff presents no case law indicating that such a bifurcated assignment of weight is improper, and instead argues that it is simply "odd." (Doc. 8 at 13). The Court finds no reason why the ALJ cannot give controlling weight to one portion of a treating physician's opinion while discounting another, so long as the ALJ articulates "good reasons" for its decision to do so.

Next, Plaintiff says that the ALJ erred by failing to address the issue of weight with regard to the opinion of two of his treating physicians, Drs. Sczormak and Swerdlow-Freed. This argument, too, is without merit. Both physicians diagnosed Plaintiff with major depression, recurrent, and recommended that Plaintiff continue psychological treatment. However, the ALJ had *already determined* that Plaintiff suffered from recurrent major depression. Neither physician opined as to Plaintiff's ability to return to work, or made a determination regarding Plaintiff's GAF score. Even assuming, as Plaintiff argues, that the ALJ improperly failed to give controlling weight to these physicians' medical opinions, the opinions were largely irrelevant to the ALJ's RFC assessment.

Finally, Plaintiff argues that the ALJ erred by considering the April 10, 1996 evaluation of Dr. Zvirbulis, who recommended Plaintiff return to full-duty employment, because this was prior to Plaintiff's alleged onset date of September 15, 1996.

However, Plaintiff's most favorable evaluation indicating a GAF score of 40 also predated the alleged onset date. In addition, as noted by the ALJ, there is minimal evidence dating between the onset date and the expiration of his insured status on December 31, 2001. Plaintiff carries the burden of demonstrating that he became disabled *before* this expiration date, and evidence dating from a few months prior to the alleged onset date is certainly relevant a relevant consideration. Finally, Dr. Zvirbulis's evaluation is consistent with Dr. Chun's June 16, 1997 post-onset date evaluation, which concluded that Plaintiff was "highly intelligent and capable of performing his duties."

Therefore, the ALJ properly evaluated the medical evidence and assigned appropriate weight to the medical opinions before her.

### B. Substantial Evidence Supports the ALJ's Determination

**1.**

Next, Plaintiff says that the ALJ's decision was not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ erred in concluding that his irritable bowel syndrome, chronic insomnia, and chronic fatigue did not constitute "severe impairments." In support, Plaintiff notes several instances where he was diagnosed with peptic ulcer disease, irritable bowel syndrome, chronic insomnia, and fatigue, as well as multiple symptoms of psychologically induced stress. There is no question, however, that Plaintiff suffered from these disorders; rather, the issue is the severity of those impairments, as determined by the ALJ. Here, the ALJ noted no "permanent limitation that would interfere with [Plaintiff's] ability to perform basic work activities."

11

(Tr. at 37-38) In addition, the ALJ discussed all of Plaintiff's claimed impairments, concluding that his claimed limitations "were not so excessive as to label them as work preclusive," and that his "subjective complaints cannot be found completely credible." (Tr. at 43).

**2.**

Although such a credibility assessment must be supported by substantial evidence in the record, the ALJ's findings regarding a claimant's credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Here, the several physicians that treated Plaintiff determined that he should return to work, and was fully capable of doing so. In addition, the ALJ noted Plaintiff activities of daily living, concluding that he was "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. at 44). The ALJ therefore provided specific reasons for her credibility determination and there was substantial evidence in the record supporting her determination that Plaintiff retains the functional capacity to perform a limited range of work activities.

## V. CONCLUSION

For the above reasons, Plaintiff's Motion for Summary Judgment has been denied, and Defendant's Motion for Summary Judgment has been granted. This case is DISMISSED.

SO ORDERED.

S/Avern Cohn
UNITED STATES DISTRICT JUDGE

                                                13-13428 Dick Clayton Chaffee v.
                                                     Commissioner of Social Security

Dated: December 10, 2014

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, December 10, 2014, by electronic and/or ordinary mail.

                                                   S/Sakne Chami
                                                 Case Manager, (313) 234-5160

